OPINION
{¶ 1} This action in mandamus is presently before this court for determination of the parties' competing motions for summary judgment. Upon considering the respective evidentiary materials and legal arguments of the parties, we conclude that respondent, the Southeast Local School District Board of Education, has demonstrated that relator, Carrie Edwards, is not entitled to a continuing contract as a teacher. Thus, respondent is entitled to summary judgment on relator's entire mandamus claim.
 {¶ 2} The following statement of fact is based on the undisputed assertions set forth in the parties' evidentiary materials. Relator is a duly certified teacher in the state of Ohio. Since July 2001, she has been employed as a high school science teacher in the Southeast Local School District in Portage County, Ohio. As a member of the high school staff, relator belongs to the Southeast Local District Teachers Association, which represents the teachers for purposes of negotiating collective bargaining agreements.
 {¶ 3} Respondent is the administrative body which is legally responsible for the operation of the Southeast Local School District. As part of its basic duties, respondent negotiated with the Teachers Association a collective bargaining agreement which was intended to be effective for approximately one year, beginning in June 2003. However, when it subsequently became time to enter into a new agreement, respondent and the Teachers Associations were not able to settle their differences. In light of this, the two entities agreed that the June 2003 collective bargaining agreement would stay in effect during the interim period. As a result, that agreement still controlled the rights of relator when the instant action was initiated in June 2005.
 {¶ 4} As part of its general section governing teachers' contracts, the June 2003 agreement contained provisions for the issuance of continuing contracts. According to respondent, the provisions stated that when a teacher first became eligible for this type of contract, the superintendent of the district could still recommend that she be awarded a limited contract of one or two years. The provisions also supposedly contained timing requirements which respondent and the district superintendent had to meet in order for the limited contract to take effect.
 {¶ 5} Besides the foregoing, the June 2003 collective bargaining agreement had a section which set forth a grievance procedure. According to respondent, the section defined a "grievance" as any claim by a teacher that a term of the agreement had been violated, misinterpreted, or misapplied, and provided for three distinct "levels" of formal consideration of a grievance, including an arbitration proceeding under the rules of the American Arbitration Association.
 {¶ 6} Near the conclusion of the 2004-2005 school year, relator became eligible for a continuing contract with the school district. On April 23, 2005, the superintendent of the district sent relator a notice regarding her contract status. At the beginning of this correspondence, the superintendent expressly stated that she intended to recommend to respondent that relator be awarded a continuing contract. The superintendent further stated that if respondent voted to deny the continuing contract, she would recommend that relator be given a limited contract of two years.
 {¶ 7} Two days after giving relator the foregoing notice, the superintendent sent her a second notice which set forth some of the performance difficulties relator had had to confront during her first four years with the district. The second notice also indicated that, in the opinion of the superintendent, relator would need additional time in which to show that she will ultimately be able to overcome those problems. Based upon this, the second notice reiterated that if the initial recommendation of a continuing contract was rejected, the superintendent would urge respondent to give the two-year limited contract to relator.
 {¶ 8} On April 26, 2005, respondent conducted an open meeting to consider the contract status of a number of teachers in the district. In relation to relator, respondent first voted not to extend an offer of a continuing contract to her. However, after hearing the superintendent's recommendation to still re-employ relator, respondent unanimously voted to give her the two-year limited contract as a teacher for the district.
 {¶ 9} Once relator had received notice of respondent's decision and then signed the limited contract, she filed her petition in the instant action. As the basis for her sole claim for relief, relator alleged that respondent had failed to follow the required statutory procedure for giving her a limited contract in lieu of a continuing contract. Citing R.C. 3319.11, she asserted that after respondent had voted not to award to her a continuing contract, it could not immediately consider whether she should be awarded the two-year limited contract. Instead, according to relator, respondent could not vote on the limited contract until the superintendent had sent her a new notice which expressly stated what the recommendation would be regarding the limited contract. In light of this, she sought the issuance of a writ of mandamus to compel respondent to give a continuing contract to her under the statute.
 {¶ 10} Approximately six months after instituting this action, relator submitted an amended mandamus petition. In this new pleading, she simply retracted all of her prior assertions as to whether the district superintendent had provided a proper explanation of the problems she needed to correct in order to ultimately obtain a continuing contract; in regard to the issue of whether the superintendent was required to send a new notice after respondent's initial vote on her contract, her basic allegations remained the same. Once respondent had filed its new answer to the amended complaint, the parties then submitted their respective motions for summary judgment.
 {¶ 11} Under its Civ.R. 56 motion, respondent has asserted two basic arguments for our consideration. First, respondent contends that relator cannot contest the validity of the "notice" procedure in the context of this mandamus action because there was an alternative legal remedy relator could have pursued to resolve the dispute. In support of this position, respondent states that the June 2003 collective bargaining agreement had specific provisions that set forth the manner in which the superintendent was required to provide notice of the intent to recommend a two-year limited contract. Based upon this, respondent further states that, because the provisions of the June 2003 agreement was controlling, relator was required to litigate the dispute through the grievance procedure under that agreement. Finally, respondent maintains that while this action was pending in this court, relator initiated an arbitration proceeding under the grievance procedure, but subsequently withdrew her grievance before the hearing could be concluded.
 {¶ 12} In conjunction with the foregoing argument, respondent submitted seven exhibits which purportedly included copies of the following four documents: (1) the June 2003 collective bargaining agreement; (2) the two notices which the superintendent of the district sent to relator in April 2005; (3) the grievance claim relator filed after she had been offered the two-year limited contract; and (4) a transcript of the partial arbitration proceeding. Although respondent fully discussed the content of these exhibits as part of its summary judgment motion, it did not submit with the materials any affidavit which discussed the authenticity of the purported documents.
 {¶ 13} In replying to respondent's "arbitration" argument, relator specifically noted that, pursuant to Civ.R. 56(C), respondent had failed to follow the proper procedure for authenticating documents in a summary judgment exercise. Consequently, respondent then filed the affidavit of its current treasurer, Paul F. Wulff. Besides stating that he was the custodian of respondent's various papers, Treasurer Wulff expressly indicated that three of the exhibits were proper copies of the original documents. However, in regard to the alleged copy of the June 2003 collective bargaining agreement, Treasurer Wulff did not make any specific averment.
 {¶ 14} As relator aptly stated in her reply brief, Civ.R. 56(C) delineates a specific list of documents, including pleadings, depositions, and written admissions, which any party can employ as evidentiary materials in support of a summary judgment motion. The rule also provides that if a document or item is not referenced in the rule, it cannot be considered in ruling upon the merits of the motion. In light of these provisions in the rule, the courts of this state have held that when an item of documentary evidence does not fall within the aforementioned rule, the item can only be introduced for purposes of summary judgment if it is accompanied by an affidavit which establishes the necessary factual foundation. See Blanton v. Cuyahoga Cty. Bd. ofElections, 150 Ohio App.3d 61, 2002-Ohio-6044, at ¶ 13.
 {¶ 15} In asserting that relator's "improper notice" argument had to be submitted to arbitration, respondent contends that its actions in providing notice to her was subject to the provisions of the June 2003 collective bargaining agreement. However, in order for this court to verify respondent's contention, it is critical that a properly authenticated copy of the agreement be before us. As was noted previously, our review of Treasurer Wulffs affidavit readily shows that it does not contain any reference to the exhibit which supposedly is a copy of the agreement. Therefore, since this court cannot determine if the terms of the agreement were applicable to the superintendent in providing notice to relator, we reject respondent's first argument that an arbitration proceeding constituted a viable alternative remedy at law under the facts of this case.
 {¶ 16} Under the second argument in its summary judgment motion, respondent addresses the merits of the issue which formed the basis for relator's mandamus claim. As was discussed above, the crux of relator's entire petition was that respondent and its district superintendent had violated the requirements of R.C. 3319.11 in not sending her a new notice after respondent had voted to deny her a continuing contract. Stated differently, relator has taken the position that the superintendent's second notice to her had no legal effect because it was given before respondent had actually voted on the first recommendation. In relation to this point, respondent simply submits that the language of the statute in question does not support relator's position that the notice concerning a limited teaching contract could not be sent until after the vote for the continuing contract had been taken.
 {¶ 17} In the absence of a specific provision in a collective bargaining agreement, the procedure for awarding a continuing contract or a limited contract to a teacher will be governed by R.C. 3319.11. After stating certain definitions in its opening section, the statute first provides that a school teacher can be eligible for a continuing contract with a district under two circumstances: (1) when the teacher has taught for that district for at least three of the preceding five years; and (2) when the teacher has taught for that district for two years and had previously attained continuing contract status with another district. Subsection (B)(1) of the statute then provides that if the superintendent of the district has recommended the reemployment of a teacher who is eligible for a continuing contract, the teacher must be awarded such a contract unless the board of education votes by a three-fourths majority to reject the recommendation. This subsection also states that if the superintendent does not make any further recommendation as to the teacher's employment once the "no" vote has been rendered, the board of education is required to send the teacher a written notice by "the thirtieth day of April" that it does not intend to rehire her for the following school year.
 {¶ 18} Our review of R.C. 3319.11 further shows that when an eligible teacher is not given a continuing contract, a superintendent can only recommend that the teacher be awarded a limited contract. The procedure for this type of recommendation is stated in subsection (C) (1 ) of the statute:
 {¶ 19} "(C)(1) If a board rejects the recommendation of the superintendent for reemployment of a teacher pursuant to division (B)(1) of this section, the superintendent may recommend reemployment of the teacher, if continuing service status has not previously been attained elsewhere, under an extended limited contract for a term not to exceed two years, provided that written notice of the superintendent's intention to make such recommendation has been given to the teacher with reasons directed at the professional improvement of the teacher on or before the thirtieth day of April. Upon subsequent reemployment of the teacher only a continuing contract may be entered into."
 {¶ 20} In regard to the consideration of a "limited contract" recommendation, R.C. 3319.11(C)(2) indicates that if the board of education votes affirmatively to allow such a contract, it must give notice of the decision by the "thirtieth day of April" to the teacher; if this notice is not provided in a timely manner, the teacher will be deemed to have been reemployed with a continuing contract. Similarly, R.C. 3319.11(C)(3) states that if the board rejects the recommendation and fails to provide notice of the decision by the thirtieth day of April, the teacher will be deemed to have been reemployed with a limited contract of one year.
 {¶ 21} Upon considering the provisions of R.C. 3319.11(C)(1) in the context of the entire statute, this court holds that the wording of the statute supports respondent's interpretation as to the timing of a superintendent's notice of the recommendation for a limited contract in lieu of a continuing contract. That is, the statute does not provide any indication pertaining to when the "limited contract" notice should be given in relation to the school board's vote on the "continuing contract" recommendation. In other words, the statute does not contain any language stating that the notice of a "limited contract" recommendation can be sent to the teacher only after the school board has rendered its decision to reject the "continuing contract" recommendation.
 {¶ 22} As to the timing of the school board's consideration of a "limited contract" recommendation, the language of R.C. 3319.11(B)(1) and (C)(1) readily indicates that the school board is not allowed to proceed on that specific type of recommendation until it has expressly rejected the recommendation of a continuing contract. To this extent, the language of the statute supports the conclusion that it would be permissible for the school board to consider each type of employment recommendation at a different board meeting, and that a superintendentcould wait to issue the notice of the "limited contract" recommendation until after the first meeting had been held on the "continuing contract" recommendation. However, even though the foregoing procedure may be permissible and somewhat logical, there is no exact language in the statute that mandates such a procedure, either as to the use of two meetings or the timing of the notice for a "limited contract" recommendation.
 {¶ 23} In fact, regarding the "limited contract" notice, R.C. 3319.11
only contains one reference to its timing; i.e., the statute's sole express provision is that such a notice must be given to the teacher by the last day of April. Given this specific timeline for this notice, it follows that if the General Assembly had intended to require that the notice be provided only after the board of education had taken its vote on the "continuing contract" recommendation, it could have specifically stated such in the statute. In the absence of any other express language, it must be assumed that the General Assembly intended for the "limited contract' notice to be given at any time prior to the last day of April.
 {¶ 24} As a separate point, this court would again indicate that, pursuant to R.C. 3319.11(C)(2) and (C)(3), the school board's final determination on a "limited contract" recommendation must be made by the thirtieth day of April. In light of the fact that the notice of that recommendation may also be given on that same date, it is apparent that the Ohio legislature did not intend for the notice to be provided in such a manner which would afford the teacher an opportunity to prepare any type of "defense" in the matter. Rather, the notice is merely intended to inform the teacher of the possible contract she could receive and the nature of the perceived problems with her teaching ability. If this was not the case, the General Assembly would have set an earlier date for providing the notice of such a recommendation.
 {¶ 25} The limited purpose of a "limited contract" notice further explains why the General Assembly chose not to include in R.C. 3319.11 a specific provision that would mandate the service of the notice after the school board's final vote on the "continuing contract" recommendation. Our review of the entire statute shows that it does not have any provision allowing for the teacher's participation in the board meeting in which the "limited contract" recommendation will be considered; instead, a teacher can participate in an "employment" proceeding only when she has requested a hearing on the decision not to re-employ her for the following school year. See R.C. 3319.11(G). Hence, since the sole reason for providing a notice of a "limited contract" recommendation is simply to advise the teacher of the general situation, she cannot be prejudiced by the timing of the notice even when the superintendent decides to send the notice prior to the school board's consideration of the "continuing contract" recommendation.
 {¶ 26} As to the latter point, this court would note that, throughout her various submissions in the instant case, relator has never asserted that she was prejudiced by the timing of the superintendent's "limited contract" notice. Rather, she has only argued that, because respondent failed to proceed in accordance with her interpretation of R.C. 3319.11, she is entitled to a "continuing" contract. If there was a factual scenario under which a teacher could be harmed when the "limited contract" notice is given prior to the school board's final vote of the "continuing contract" recommendation, that point would certainly be relevant in attempting to discern the true intent of the General Assembly. However, when there is no apparent prejudice and the statute does not contain any language concerning the precise timing of the "limited contract" notice in relation to the "continuing contract" decision, this court must conclude that the Ohio legislature did not intend to set forth any specific requirement on that particular timing issue.
 {¶ 27} In moving for summary judgment in her favor, relator does not cite any case law in support of her interpretation of R.C. 3319.11(C). Instead, she relies solely upon the text of a treatise written by Kimball H. Carey, Special Counsel for the Ohio School Board Association. See Carey, Ohio School Law (2004), 458-459. In the part of his treatise pertaining to limited teacher contracts, Carey begins his analysis by noting that a superintendent's recommendation for a limited contract can only be considered once the board has voted not to award a continuing contract. Based solely upon this, Carey states that any "limited contract" notice to the teacher cannot be sent until after the board's first decision has been made. In light of this, Carey further concludes that a school board must hold two meetings in order to properly award a limited contract to a teacher who is eligible for a continuing contract.
 {¶ 28} In reaching the foregoing conclusion, Carey's treatise does not reference any specific language in R.C. 3319.11; as a result, we cannot find his legal analysis to be persuasive. Again, while holding a separate meeting on each contract recommendation by the superintendent may be logical, it is not mandated by the statute. There is simply no language in R.C. 3319.11 which prohibits a superintendent from issuing both notices prior to the first meeting so that, depending upon its vote for a continuing contract, the school board can consider both recommendations in a single meeting.
 {¶ 29} Under general Ohio law, it is well settled that the primary goal of statutory construction is to discern the intent of the legislature in passing the statute in question. Carnes v. Kemp,104 Ohio St.3d 629, 2004-Ohio-7107, at ¶ 16. In engaging in this type of analysis, a court must first examine the specific language contained in the statute. Provident Bank v. Wood (1993), 36 Ohio St.2d 101, 105. If the wording of the statute is unambiguous, the court is obligated to apply the provision in accordance with the clear meaning of the words used; under such circumstances, no further steps to "interpret" the statute can be taken. Id.; Bosher v. Euclid Income Tax Bd. ofReview, 99 Ohio St.3d 330, 2003-Ohio-3886, at ¶ 14.
 {¶ 30} In the instant matter, our review of R.C. 3319.11(C) indicates that it only has one provision governing the timing of a superintendent's notice of a "limited contract" recommendation. The unambiguous wording of that provision merely states that such a notice must be given to the teacher by the last day of April; the provision does not contain any statement regarding when such a notice must be provided in relation to a school board's decision on a "continuing contract" recommendation. Given the limited purpose of a "limited contract" notice and the lack of any specific language in the statute, this court concludes that R.C. 3319.11(C) does not mandate that the "limited contract" notice must always be provided after the school board has made the decision not to award a continuing contract. Instead, such a notice can also be provided to the teacher prior to the vote on the "continuing contract" recommendation, so long as it is not made contemporaneously with the "continuing contract" notice.
 {¶ 31} As the factual basis for her summary judgment motion, relator indicated that she was relying upon certain factual assertions in her amended petition which had been admitted by respondent in its answer. In one of the assertions, relator stated that, on April 25, 2005, respondent's superintendent had given her a notice which specifically declared that the superintendent would be recommending her for a limited contract of two years if respondent voted not to give her a continuing contract. Since respondent's own evidentiary materials refer to this particular notice, there is no dispute in the instant case that a proper "limited contract" notice was provided to relator. Thus, because this notice was given separately from the "continuing contract" notice and prior to the last day of April 2005, the undisputed facts before us show that respondent's superintendent fully complied with the requirements of R.C. 3319.11(C) in this particular instance.
 {¶ 32} In order to be entitled to a writ of mandamus, the relator must demonstrate that, inter alia, the public official has a clear legal duty to perform the requested action. State ex rel. Manson v. Morris (1993),66 Ohio St.3d 440 441. In light of the foregoing analysis, this court holds that respondent in the present matter has met the standard for summary judgment in regard to this element of a mandamus claim. That is, respondent has shown that: (1) there is no remaining factual dispute as to the superintendent's full compliance with R.C. 3319.11(C); (2) respondent is entitled to judgment on that issue as a matter of law; and (3) the nature of the evidentiary materials are such that, even if those materials are construed most favorable to relator, a reasonable person can only reach a conclusion against relator. See Welco Industries, Inc.v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. Simply stated, since respondent's superintendent gave relator a timely notice of the recommendation for a limited contract of two years, respondent is not legally obligated to give relator a continuing contract as a teacher.
 {¶ 33} Consistent with the foregoing, respondent's motion for summary judgment is granted. It is the order of this court that judgment is therefore entered in favor of respondent as to relator's entire amended petition for a writ of mandamus.
CYNTHIA WESTCOTT RICE, P.J., WILLIAM M. O'NEILL, J., COLLEEN MARY OTOOLE, J., concur.